# Exhibit 02

# SALTAMAR INNOVATIONS

30 Fern lane
South Portland, ME 04106
USA
Phone: +1(207) 799-9733
Fax:+1(207) 767-5324
E-mail: Shalom@Saltamar.com
HTTP://www.saltamar.com

# In the United States Patent and Trademark Office

| In re application of: | Graham Clemie, et al. | | |
|---|---|---|---|
| For: | CENTRALISED INTERACTIVE GRAPHICAL APPLICATION SERVER | | |
| Serial No. ~confirm: | 10/506,151 ~ 8293 | Group: | 2628 |
| Filed on: | Aug 31, 2004 | Examiner: | Nguyen, Hau H. |
| Correspondence Date | August 28, 2010 | Docket: | 0413US-CLEMIE |

## Amendment and response
## AFTER FINAL REJECTION

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir,

This document is filed in response to the FINAL office action mailed applicant on March 2nd, 2010.

This amendment is filed together with a petition for an extension of time under 37 C.F.R. § 1.136, to extend the time for response and make the filing of this response timely.

This response is further filed with a request for continued examination.

Please amend the above-identified application as follows:

Amendments to the claims begin on page 2 of this paper.

Remarks begin on page 8 of this paper.

## In the claims:

Please amend the present claims in accordance with the following listing:

1. (Currently amended)   A method of generating a compressed video data signal using at least one graphics processor module, comprising the steps of:
   a)   receiving a first set of instructions for a graphics processor module, said first set of instructions relating to how to render image frames;
   b)   intercepting said first instructions and generating a second set of instructions for a graphics processor module;
   c)   processing said first set of instructions or said second set of instructions in a graphics processor module to generate first graphics data, said first graphics data comprising image frames;
   d)   processing said second set of instructions to generate second graphics data;
   e)   processing said second graphics data to generate compression assistance data; and
   f)   processing said first graphics data using said compression assistance data to generate a compressed video data signal<u>;</u>
   <u>wherein the generation of said second set of instructions comprises analyzing said first set of instructions to determine which instructions of said first set of instructions are useful for the generation of compression assistance data.</u>

2. (Original)   A method according to claim 1, wherein said second set of instructions is generated such that step d) uses less data processing power than step c).

3. (Cancelled)

4. (Previously presented)   A method according to claim 1, wherein the method further comprises generating instructions in said second set of instructions for defining a first attribute, said first attribute corresponding to a second attribute which is defined in

said first set of instructions, said first attribute to be mapped to substantially the same point on substantially the same graphics object, as said second attribute.

5. (Previously presented)   A method according to claim 1, wherein said first set of instructions comprises graphics texture instructions and wherein said second set of instructions comprises different graphics texture instructions.

6. (Original)   A method according to claim 5, wherein said different graphics texture instructions define at least one texture attribute which is arranged to be substantially unique to an area within an image frame in the second graphics data.

7. (Previously presented)   A method according to claim 5, wherein said method further comprises the step of generating different graphics texture mappings for at least one graphics object.

8. (Previously presented)   A method according to claim 5, wherein said method further comprises the step of performing a projection texture mapping processing for at least one graphics object.

9. (Previously presented)   A method according to claim 1, wherein said method further comprises the step of writing at least part of said second graphics data to a memory cache for at least one graphics object.

10. (Previously presented)   A method according to claim 1, further comprising the steps of inputting said first set of instructions or said second set of instructions to a first graphics processor module to generate said first graphics data, and inputting said second set of instructions to a second graphics processor module to generate said second graphics data,.

11. (Previously presented)   A method according to claim 1, wherein said step of generating said second set of instructions further comprises the step of generating instructions for processing said first or said second set of instructions from

a point in time corresponding to the present image frame and a first or a second set of instructions of a different point of time than the point of time of the present image frame in order to generate said second graphics data.

12. (Previously presented)  A method according to claim 1, wherein the method includes generating, as part of second set of instructions, instructions for storing data processed from said first or second set of instructions corresponding to a point in time for processing with data processed from said first or second set of instructions corresponding to another point in time in order to generate compression assistance data.

13. (Previously presented)  A method according to claim 1, wherein the method further comprises the step of storing of at least a part of said first or second set of instructions corresponding to a point of time for processing with instructions corresponding with another point in time in order to generate second graphic s data.

14. (cancelled)

15. (Previously presented)  A method according to claim 1, wherein generation of said second set of instructions comprises the step of creating unique signatures for one or more elements of the first set of instructions so as to facilitate the subsequent recognition of said elements.

16. (Previously presented)  A method according to claim 15, wherein said signatures are constructed from information within said second set of instructions.

17.     Apparatus for generating a compressed video data signal, the apparatus comprising at least one graphics processor module, the apparatus comprising:

   a)    an instruction interceptor capable of receiving a first set of instructions for a graphics processor module, said first set of instructions relating to how to render image frames and generating an output comprising a second set of instructions for a graphics processor module;

      b)    a processing function capable of processing said first set of instructions or said second set of instructions in a graphics processor module, said processing function having an output capable of generating first graphics data, said first graphics data comprising image frames;

      c)    a processing function capable of processing said second set of instructions, said processing function being further capable of producing an output comprising second graphics data;

      d)    a compression assistance data generator capable of receiving an input comprising said second graphics data and producing an output comprising compression assistance data; and

      e)    an encoder capable of processing said first graphics data using said compression assistance data, to generate a compressed video data signal;

<u>wherein the apparatus is further capable of generation of said second set of instructions by analyzing said first set of instructions to determine which instructions of said first set of instructions are useful for the generation of compression assistance data.</u>

18. (Previously presented) Apparatus according to claim 17, comprising a plurality of instruction interceptors each of which is adapted to input different instructions to different graphics processor modules.

19. (Cancelled)

20. (Previously presented) A method according to claim 4, wherein said first set of instructions comprises graphics texture instructions and wherein said second set of instructions comprises different graphics texture instructions.

21. (Previously presented) A method according to claim 11, wherein generation of said second set of instructions involves analyzing said first set of instructions to determine which of said first set of instructions are useful for the generation of compression assistance data.

22. (Previously presented)   A method according to claim 1 wherein said step of generating said second set of instructions further comprises the step of generating instructions for processing said first or said second set of instructions from a point in time corresponding to the present image frame and a first or a second set of instructions of a different point of time than the point of time of the present image frame, in order to generate said second graphics data.

23. (Previously presented)   A method according to claim 4 wherein said step of generating said second set of instructions further comprises the step of generating instructions for processing said first or said second set of instructions from a point in time corresponding to the present image frame and a first or a second set of instructions of a different point of time than the point of time of the present image frame, in order to generate said second graphics data.

24. (Currently amended) A method according to claim [[14]] 1, wherein the method further comprises the step of storing of at least a part of said first or second set of instructions from a point in time corresponding to the present image frame, for processing with instructions of a different point of time than the point of time of the present image frame in order to generate second graphics data.

25. (Previously presented)   A method according to claim 11, wherein the method includes generating, as part of second set of instructions, instructions for storing data processed from said first or second set of instructions from a point in time corresponding to the present image frame for processing with data processed from said first or second set of instructions of a different point of time than the point of time of the present image frame in order to generate compression assistance data.

26. (Previously presented)   A method according to claim 5, wherein said method further comprises the step of writing at least part of said second graphics data to a memory cache for at least one graphics object .

27. (Previously presented) A method according to claim 8, wherein said method further comprises the step of writing at least part of said second graphics data to a memory cache for at least one graphics object .

28. (Cancelled).

**REMARKS**

1) The applicant thanks the examiner for clarifying his position in the Office action mailed to applicant March 2nd, 2010.

2) Claims 1, 2, 4-13, 15-18, 20-27 are pending in the application. Claims 1 and 17 are independent. Claims 3, 14, 19 and 28 have been cancelled without prejudice. Claims 1 and 17 are amended herewith. Claim 24 is amended to depend from claim 1 instead of from cancelled claim 14.

3) To aid the Office to more clearly see the claimed invention applicant supplies herewith a list of the main elements along with abbreviations we will use henceforth. Thus:

   a) GI1 and GI2 relate to the first and second set of instructions respectively. The GI elements contain **graphic instructions**, used by the graphics processor module to generate data such as images. An example of graphics instructions includes 3D models, polygons, edges and vertices, transformation data, texture data and the like, as described in the specifications.

   b) GD1 and GD2 relate to the first and second graphics DATA. The graphics data is the result of processing of GI1 and/or GI2, for example images – pixels and other image elements which create individual frames in a video stream and other elements, as described in the specifications.

   c) CD – Compression assistance data.

**Regarding the independent claims as presently amended**

4) Claims 1 and 17 were amended to incorporate the limitations of cancelled claim 14. Applicant will discuss the amended claim 1, but the arguments presented are applicable to claim 17 as well.

5) In the amended claims 1 and 17, the determination of which first instructions of **GI1** are useful does not necessitate that the second set of instructions **GI2** contain any of the instructions from **GI1**. The analysis step is used to determine the generation

    method or the type of compression assistance data **CD** to generate by taking into account what is learnt from an analysis of the instructions **GI1**..

6) The Office rejected claim 14 under 35 U.S.C. §103(a) as being unpatentable of Levoy ("Polygon-Assisted JPEG and MPEG Compression of Synthetic Images" ACM (1 995) ACM-0-8979 1-70 1 -4/95/008), in view of Naylor (U.S. Patent No. 5,742,289) and further in view of Yoon et al. ("Web-Based Remote Rendering with IBRAC (Image-Based Rendering Acceleration and Compression)" Eurographics 2000).  The Office argues that Yoon teaches us the step of generating the second set of instructions **GI2**, by analyzing a first set of instructions **GI1** so as to determine which of those instructions are useful for the generation of compression assistance data **CD**.

7) Yoon describes a system whereby a model renderer RM creates a reference image. An image renderer RI then extracts pixels from the reference image. If any pixels are missing, RM is called upon to fill in the gaps.

8) In Section 2.1, YOON states, "RI tests for ray intersections in the reference images which has color and depth values at each pixel; **no object data is necessary to be stored. It generates a new image by extracting reusable information from previously rendered image**." (Emphasis added).   Further, Yoon states "To generate a complete derive [sic] image, **RM** is called for pixels where **RI** fails to extract reusable information."

9) It is therefore extremely clear that Yoon is explicitly directed to the analysis of **image data**, i.e. an element of the type of **GD1** or **GD2**, containing pixel information, rather than the instructions that create the graphics data, such as **GI1**.

10) The Office asserted (page 13, regarding claim 14): "In this way the parts of the 1st instructions that are useful for generating the residual image are those parts that differ from the 2nd instructions.  The 2nd instructions analyze the 1st instructions to determine which of the first set of instructions are useful for generation of compression assistance data."  Thus the Office suggests that the parts of **GI1** that differ from **GI2** are the instructions useful for generating residual image data, which the Office equates with the compression assistance data **CD**,  and that **GI2** analyses **GI1** to derive **CD**  This suggestion suffers from several shortcomings.

a) As was shown *supra,* Yoon is directed to the analysis of **image** data.  The claim elements require that the analysis will be directed at graphics INSTRUCTIONS set **GI1**.  ==Applicant's specifications and claims clearly distinguished between graphics INSTRUCTIONS and graphics DATA,== (see for example paragraph 184, and elsewhere in the application).  Yoon, by his own language, is directed to **analyzing image data** and the graphics instructions are not needed. ("*no object data is necessary to be stored. It generates a new image by extracting reusable information from previously rendered image*", Yoon, 2.1).  Thus clearly Yoon does not disclose analyzing the first set of instructions **GI1** as claimed.

Furthermore, in his rejection of claim 1 the Examiner equated the compression assistance data **CD** to the motion vectors that are extracted by the rendering engine (page 4, ll. 14), yet with regards to claim 14, the Examiner equated the compression assisted data **CD to the residual image**. While applicant agrees that motion vectors may be considered as compression assistance data, applicant respectfully submits that equating the compression assistance data **CD** to the residual image is improper as the residual image is in fact the compressed video signal. In other words the residual image is akin to the processed **GD1** stated in claim 1f), rather than a compression assistance data **CD**.

11) Thus applicant submits that Yoon does not disclose the claimed feature of generation of the second set of instructions **GI2** comprising analyzing said first set of instructions **GI1** to determine which instructions of said first set of instructions are useful for the generation of compression assistance data **CD**. The Office stated that "the combined [sic] do not explicitly disclosed a method according to claim 1" Applicant agrees,  and therefore clearly the combination does not disclose the added features of claim 14.  Thus none of the cited references – when taken together or separately, in any order or any combination - do not disclose, hint, or teach all the claimed elements which were incorporated in claims 1 and 17, and thus the amended claims 1 and 17 should be allowed if for that reason alone.

## Regarding the independent claims as previously presented

12) Inasmuch as the Examiner may still consider Yoon to provide the newly added feature of analysis of the first set of instructions **GI1**, applicant respectfully submits the following additional arguments to bolster his position that even prior to the amendment, claim 1 was patentable over the combination of Naylor and Levoy.

13) The references did not disclose all claim limitations. Furthermore, the combination is improper as it will impermissibly modify the principle of operation of the cited reference (If the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims prima facie obvious. In re Ratti, 270 F.2d 810, 123 USPQ 349 (CCPA 1959), MPEP 2143.01).

14) The Office asserted that claim 1, as previously presented, was unpatentable under 35 U.S.C. 103(a) over Levoy in view of Naylor. To support this argument, the Office stated the following:

   i) "However, Naylor teaches a method of generating compressed video graphics images wherein as shown in Fig. 2, comprising processing a first (or second) set of instructions… to generate first graphics data…"

   ii) "Here, we refer to wherein the graphics processor renders image frames using the low performance strategy, using the low-quality model rendering instructions generated by <u>omitting the surface texture</u>, as show in Levoy, p. 22, Fig.1." (Emphasis added).

   iii) "Here the graphics processor uses a second set of instructions to render image frames using a lower performance strategy. We refer to [Levoy's] lower performance strategy instructions as the [Applicant's] second set of instructions. The second set of instructions is generated to render the scene <u>without surface textures."</u> (Emphasis added).

15) However, Naylor specifically states that the hybrid rendering engine (HRE) requires surface textures: "Also included in the transformations are surface details which

simulate color and texture, and shading details to simulate reflections of light." (Col 4, line 25 to 27).

16) Naylor then goes on to say, "Once the block based motion vectors are generated for each image block contained in the image frame, a prediction error is computed for each block from the block based motion vector error (step 425 of FIG. 4). The prediction error for each block is computed based on the following relationship:

$$PE_b = \sum_{\begin{pmatrix} \text{model} \\ \text{motion} \\ \text{vectors in} \\ \text{block} \end{pmatrix}} (T_r \times |MV_{model_x} - MV_{block_x}| + |MV_{model_y} - MV_{block_y}|) \quad (3)$$

where,
PEb = prediction error for a given block
Tr = texture complexity of region r
MVmodel = model motion vector
MVblock = value of block-based motion vector "

(Col. 6, lines 22 to 40). (Emphasis added).

Therefore the Office's assertion in items (ii) and (iii) above cannot be correct as Naylor requires the texture data to operate.

17) Furthermore, Levoy describes two other low performance strategies: fine versus coarse tessellation of curved surfaces; and antialiased Phong-shaded versus nonantialised Gouraud-shaded. Both of these involve the omission of pixels in the low performance strategy.

Naylor states, "Intraframe visibility of an object depends firs fly [sic] upon whether there is an overlap of the x,y coordinate positions of the images of one or more objects within the image frame." (Col 4, lines 44 to 46).

Therefore the lack of pixels described by Levoy's two other low performance strategies could not be used in combination with Naylor, as it will alter the principle of operation of Naylor and render it inoperable.

18) Furthermore, the Office failed to show a case of prima facie obviousness as one of the elements is missing from all the cited references. The Office states that the first set of instructions **GI1** must have been intercepted, "if arguendo, the first set of instructions **GI1** is not intercepted, how can it generate the second set of instructions **GI2**, which is based on the first of instructions?" (Element names GI1 and GI2 added).

19) Applicant respectfully disagrees, maintains his argument as presented in the response filed April 17, 2008, and expends thereupon hereunder. One single set of instructions could have the ability to render a full image or an image without textures without requiring a step of interception. Applicant submits that it is not obvious, to intercept a first set of instructions in order to create a second set of instructions that simply omit a feature such as textures.

20) Neither Levoy nor Naylor explicitly mention interception nor is it obvious that in the applications they describe that a step of interception might be required or is desirable. Nor could it be said that it would be obviously desirable to someone skilled in the art as the tradition in the industry (especially the video games industry) is to create specific software to do a task and therefore only have the equivalent of a single set of instructions.

21) Applicant's specifications however give specific reasons why interception is desirable and also describes strategies for how this could be implemented.

   a) "The instruction interception function may be a device driver. Alternatively the instruction interception function is a wrapper component for DirectX(TM) or OpenGL(TM)." (Para. 63).

   b) "With reference to FIG. 1, a system for interactive applications in accordance with the present invention 10 has an instruction interception module 11…" (Para. 120).

    c) "The game programs sends a first set of graphics instructions to a first graphics processing unit (GPU1) 76 which is intercepted by an instruction interception module 74, which may be embodied as a software wrapper or hardware form." (Para. 184).

    d) "A problem with the system of U.S. Pat. No. 5,742,289 [Naylor] is that it does not allow the use of standard graphics processors and will therefore need a large number of general processors as well as specially written software to perform the graphics processing. Furthermore, the games software will have to be specially written to run on this new processing platform." (Para. 24).

    e) "This invention therefore has been developed within the following design constraints:… ability to run existing games software with minimal (or even better no) changes." (Paras. 59 to 61).

22) In accordance with MPEP 2144.03(c), applicant traverses the official notice taken by the Examiner, and challenges the factual assertion as not properly officially noticed and not properly based upon common knowledge. Thus applicant respectfully requests that the examiner support the finding with adequate evidence, or withdraw the rejection.

23) Applicant further maintains his position as elucidated in the response filed on April 17, 2008 and respectfully submits that the Office failed to provide convincing response to those arguments,

## Conclusion

24) Applicant has shown that independent claims 1 and 17 as previously presented and even more clearly as presently amended, are not obvious over any and all combinations of references presented by the Office. Thus applicant submits that the rejections were overcome. Reconsideration and withdrawal of the rejection and issue of a notice of allowance on all pending claims is respectfully solicited.

25) Should the Examiner find any deficiency in this amendment or in the application, or should the Examiner believe for any reason, that a conversation with applicant's

agent may further the allowance and issuance of this application, the Examiner is kindly requested to contact Shalom Wertsberger at telephone (207) 799-9733.

Respectfully submitted

/Shalom Wertsberger, Reg # 43,359/

Shalom Wertsberger
Reg. Num 43,359
30 Fern Lane
South Portland, ME 04106
Phone: (207) 799-9733
Fax: (207) 767-5324
Agent for Applicant